# Superior Court of California

## County of Orange

Case Number : 30-2019-01073140-CU-WT-NJC

Copy Request: 4163513

Request Type: Case Documents

Prepared for: cns

Number of documents: 1

Number of pages: 14

**JML LAW**
A PROFESSIONAL LAW CORPORATION
5855 TOPANGA CANYON BLVD., SUITE 300
WOODLAND HILLS, CALIFORNIA 91367
Tel: (818) 610-8800
Fax: (818) 610-3030
JOSEPH M. LOVRETOVICH, STATE BAR NO. 73403
JARED W. BEILKE, STATE BAR NO. 195698
KARINA GODOY, STATE BAR NO. 305895

Attorneys for Plaintiff NABILA KHOURY

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF ORANGE – ~~CENTRAL DISTRICT~~** MG
North Justice Center

| | |
|---|---|
| NABILA KHOURY , an individual<br>Plaintiff,<br><br>vs.<br><br>Vitas Healthcare Corp & Sub, a Florida Corporation; and DOES 1-50, inclusive,<br>Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>1. **VIOLATION OF LABOR CODE § 1102.5;**<br>2. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY; AND**<br>3. **VIOLATION OF HEALTH & SAFETY CODE SECTION 1278.5**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

Plaintiff, NABILA KHOURY, hereby brings her complaint against the above-named Defendants and states and alleges as follows:

## PRELIMINARY ALLEGATIONS

1. At all times mentioned herein, NABILA KHOURY was a resident of the State of California.

2. Plaintiff is informed and believes, and based thereon alleges, that Defendant Vitas Healthcare Corp & Sub, a Florida Corporation doing business in the County of Orange, State of California at 310 Commerce, STE 200, Irvine CA, 92602. At the time the causes of action arose, Defendant was Plaintiff's employer.

3. The true names and capacities, whether individual, corporate, associate or otherwise of DOES 1 through 50 are unknown to Plaintiff who therefore sues these defendants under said fictitious names. Plaintiff is informed and believes that each of the defendants named as a Doe defendant is legally responsible in some manner for the events referred to in this Complaint, is either negligently, willfully, wantonly, recklessly, tortiously, strictly liable, statutorily liable or otherwise, for the injuries and damages described below to this Plaintiff. Plaintiff will in the future seek leave of this court to show the true names and capacities of these Doe defendants when it has been ascertained.

4. Plaintiff is informed and believes, and based thereon alleges, that each defendant acted in all respects pertinent to this action as the agent of the other defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each defendant are legally attributable to the other defendants.

5. Hereinafter in the Complaint, unless otherwise specified, reference to a Defendant or Defendants shall refer to all Defendants, and each of them.

///

///

## FACTUAL ALLEGATIONS

1. Plaintiff Nabila Khoury was hired by Vitas Healthcare Corporation (Vitas) on February 5, 2018 as a Hospice Care Nurse.

2. Throughout Plaintiff's employment, Plaintiff performed her job duties in an exemplary fashion, up until the time of her termination, on or about April 26, 2018, after repeatedly complaining internally throughout March and April of 2018 to her superiors about patient elder/financial abuse, about patients being improperly admitted, and about patients' medical needs being ignored.

3. In March 2018, one of Vitas' female patients (hereinafter "Female Patient") told Plaintiff that she (the patient) was having flank/pelvic pain. Female Patient was a cardiac patient with symptoms of UTI. Plaintiff understood that Female Patient had pain associated with her UTI. In an email, Plaintiff told a Vitas doctor named Dr. Moussavi that Female Patient has pain associated with UTI. Dr. Moussavi emailed back and said the pain was not because of UTI. In the email, Dr. Moussavi also said something to the effect of how elderly people with UTI cannot feel pain because they are so desensitized and the pain has to be much more serious/associated with the terminal illness.

4. A day or two after this interaction with the elderly female patient and Dr. Moussavi, Plaintiff was directed by her supervisor, Lindsay Lowe and a nurse manager, that Dr. Moussavi should initiate a comfort care pack for the patient.

5. Plaintiff was surprised, as comfort care packs are typical reserved for patients with terminal illness' that are suffering excruciating pain.

6. Plaintiff immediately informed her supervisor, Lindsay Lowe, a social worker, that the pain the elderly patient was experiencing was associated with her UTI, to which Lindsay Lowe responded with "No, no, no…we don't treat UTI and just need to give her morphine."

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

7. When Plaintiff questioned Lindsay Lowe as to why she could not directly request the comfort pack for the patient, Lowe responded that it was better if a nurse recommended the treatment.

8. Plaintiff opposed Lindsay Lower's instructions, believing it was misconduct to advise of the recommendation with no medical reason for doing so, and instead advised Dr. Moussavi via email that the patient was experiencing pain consistent with a UTI, and she recommended the use of antibiotics for treatment.

9. Dr. Moussavi responded to Plaintiff's email and stated that the patient could not be experiencing pain because of a UTI, and that the pain was the result of the patients underlying illness. Dr. Moussavi then prescribed the patient Methadone, as the patient was allergic to morphine.

10. Other than the discomfort because of the UTI, the patient had remained in stable health. However, after being administered the methadone, the patients' health began to rapidly decline. With her dosage being increased.

11. Within weeks, the patient passed away.

12. Plaintiff learned from another employee that another patient has also experienced deteriorating health conditions after being given methadone.

13. In mid-March 2018, Plaintiff had a verbal conversation with that patient's Durable Power of Attorney (DPOA). During that conversation, the DPOA expressed a hope that the patient would die soon to not outlive the money in the trust devoted to healthcare.

14. Around the same time, the patient's social worker verbally told Plaintiff that the DPOA previously tried to get the patient's medications discontinued.

15. In mid-March 2018 itself, Plaintiff complained to Dr. Moussavi via email that a patient's DPOA wanted to discontinue a patient's medication and there was potential elder abuse.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

16. Later in March 2018, Dr. Moussavi emailed Plaintiff back (copying Ms. Lowe and a social worker), agreeing with her.

17. At the end of March/beginning of April 2018, the same patient's caregiver told Plaintiff that the DPOA had instructed her (the caregiver) to withhold food from the patient.

18. Around April 2, 2018, Plaintiff assessed the same patient and learned the patient was admitted under false pretenses (for allegedly having dementia). The same day, over the phone, Plaintiff notified Dr. Moussavi of her findings, and advised him that the patient was "at full capacity" and requested that the patient be released.

19. She also informed Dr. Moussavi that the DPOA was instructing the caregiver to withhold food from the patient.

20. After her complaint, Dr. Moussavi was forced to discharge the falsely admitted patient.

21. The day after the falsely admitted patient was discharged, Plaintiff was written up by Ms. Lowe, and told that as a result of her actions, the patient was not being admitted to another hospital.

22. Around the same time, Plaintiff felt that another patient (hereinafter "Male Patient") was falsely admitted.

23. On or around April 6, 2018, Plaintiff verbally informed Dr. Moussavi that the Male Patient re-certification was coming up, but that he seemed to be doing better.

24. In response, Dr. Moussavi stated that "There is a business side and we need to strike a balance. If we keep on discharging patients, the corporation will discharge you and discharge me."

25. On or around April 9, 2018, after Male Patient had already been admitted to Vitas hospice care, Male Patient suffered a mild non-displaced fracture while in hospice care. That same day, Plaintiff reviewed the Male Patient's medical records as part of the normal course of her job duties. She learned that Male Patient's echocardiogram ("ECO") was normal.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

26. As a result, Plaintiff immediately advised Dr. Moussavi via text that the ECO was normal.

27. The same day, Plaintiff told Dr. Moussavi over the phone that Male Patient should be in a hospital for his hip fracture.

28. Dr. Moussavi refused to send Male Patient to the hospital and told Plaintiff over the phone to talk to Ms. Lowe so that Ms. Lowe could teach Plaintiff "how they do things at Vitas," and then abruptly hung up on her.

29. On or around April 10, 2018, Plaintiff saw Dr. Moussavi administering methadone to Male Patient. Plaintiff became worried, as the other patient had already died after improperly being administered the methadone.

30. Plaintiff then complained verbally to Dr. Moussavi and advised him that the Male patient should not be receiving the Methadone.

31. Dr. Moussavi administered the Methadone.

32. On or about April 10, 2018, after Plaintiff had made several complaints, she was written up in retaliation of her complaints.

33. On or about April 11, 2018, Ms. Lowe instructed Plaintiff to participate in Defendant's illegal practice, of falsifying patient assessments.

34. Ms. Lowe handed Plaintiff a number of her old patient assessments, wherein she listed that the patients reported no pain. Ms. Lowe gave Plaintiff a handwritten note that reads "This cannot be accepted. Please submit new w/ same dates pain ???".

35. Ms. Lowe wanted Ms. Plaintiff to: (1) forge patient assessments by showing the patients in "pain" (to justify hospice services for Medicare reimbursements/audit purposes) and (2) illegally backdate the pain assessments "w/same dates [as the original pain assessment date]."

36. In an effort to entice Plaintiff to engage in illegal conduct, she was advised that she could claim the time for having to redo the pain assessments at home.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

37. On or around April 12, 2018, Ms. Lowe emailed Plaintiff and advised her that "Dr. Moussavi wanted me to talk to you. He said you wanted the [Male] patient to go to the hospital [for his hip fracture]."

38. Plaintiff emailed Ms. Lowe back, requesting a meeting with Dr. Raj (Vitas' Medical Director) to ask for clarification about the use of Methadone in hospice care. In the email, Plaintiff included a care plan for Male Patient post-hip fracture.

39. On or around April 17, 2018, plaintiff met with Dr. Raj, Ms. Lowe, and with Teresa Hardwick of Human Resources. Plaintiff verbally gave Female Patient, a similarly-situated cardiac patient, as an example of how methadone could be detrimental and cause death during this in-person meeting with the three in Vitas management. Since Male Patient had cardiac issues (like Female Patient), Plaintiff verbally asked the three in Vitas management during the in- person meeting: "Is this Methadone going to end up killing this person? Cardiac dysfunction due to Methadone hastens death. This patient is hyperventilating and not waking up and going into a coma."

40. During the meeting, Plaintiff added that: (1) both Male and Female Patient had cardiac issues and were opioid naïve and (2) that the reason Methadone hastens death in such situations is because of Methadone's stacking abilities. Plaintiff explained that because Methadone stacks, it accumulates in our system and our bodies hold it in. For example, if one takes Methadone now, it will not leave their body quickly and it will still be there before the next dosage. This builds up is toxic for opoid naïve, cardiac patients like Male and Female Patient. Plaintiff also said that the Male Patient should go to the hospital for further assessment of his hip fracture.

41. Male Patient died a few days later.

42. On or around April 26, 2018, Plaintiff was terminated.

43. On or around April 30, 2018, Plaintiff submitted a written grievance about her retaliatory termination.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

44. Defendants finally concluded the investigation and sent Plaintiff a letter dated July 30, 2018 outlining their conclusions that the termination had not been retaliatory and that she had not engaged in protected activities.

45. The letter however completely fails to mention several of the complaints Plaintiff made.

46. Plaintiff is informed and believes, and thereon allege, that Defendant terminated her in retaliation for her complaints.

**FIRST CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA LABOR CODE § 1102.5**

**(Against ALL Defendants)**

47. Plaintiff incorporates, by reference, all the foregoing paragraphs of this Complaint as though fully set forth herein.

48. At all times mentioned herein, Labor Code section 1102.5 was in full force and effect, and were binding on Defendants, and each of them.

49. California Labor Code section 1102.5 protects workers from retaliation for a complaint about conduct that they have a reasonable belief is in violation of state or federal laws or regulations. This section protects an employee whether the complaint was made *externally* to a government or law enforcement agency or *internally* to "a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance."

50. Plaintiff is informed, believes, and based thereon alleges that a substantial factor, if not the sole factor, in Defendant's decision to terminate Plaintiff's employment was because she disclosed information regarding illegal activity, including time card fraud activities. This constitutes a violation of Labor Code section 1102.5

51. As a proximate result of the aforesaid acts of Defendants and each of them, Plaintiff has lost, and will continue to lose, earnings and fringe benefits and has suffered and/or will suffer

other actual, consequential and incidental financial losses, in an amount to be proven at trial in excess of the jurisdictional minimum of this court. Plaintiff claims such amounts as damages together with prejudgment interest pursuant to Civil Code section 3287 and/or section 3288 and/or any other provision of law providing for prejudgment interest.

52. As a proximate result of the aforesaid acts of Defendants and each of them, Plaintiff has become mentally upset, distressed, embarrassed, humiliated, and aggravated. Plaintiff claims general damages for such mental and physical distress and aggravation in a sum in excess of the jurisdictional minimum of this court.

53. Because the acts taken toward Plaintiff were carried out by Plaintiff's supervisors, who was a managerial employee acting in a deliberate, cold, callous, cruel and intentional manner, in conscious disregard of Plaintiff's rights and in order to injure and damage her, Plaintiff requests that punitive damages be levied against Defendants and each of them, in sums in excess of the jurisdictional minimum of this court.

54. As a proximate result of the wrongful acts of Defendants, Plaintiff has been forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorneys' fees and costs in connection therewith. Plaintiff is entitled to recover attorneys' fees and costs under California Labor Code § 2699(g)(1).

## SECOND CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

## (Against ALL Defendants)

55. Plaintiff incorporates, by reference, all the foregoing paragraphs of this Complaint as though fully set forth herein.

56. At all times mentioned, the public policy of the State of California, as codified, expressed and mandated in California Government Code § 12940, is to prohibit employers from discriminating, harassing and retaliating against any individual on the basis of, but not limited to, sex, race, age, disability, pregnancy, national origin, whistle blowing and engaging in protected

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

activity thereto. This public policy of the State of California is designed to protect all employees and to promote the welfare and wellbeing of the community at large. Accordingly, the actions of Defendants, and each of them, in terminating Plaintiff on the grounds alleged and described herein were wrongful and in contravention of the express public policy of the State of California, to wit, the policy set forth in California Government Code § 12940 et seq., and the laws and regulations promulgated thereunder.

57. As a proximate result of the aforesaid acts of Defendants, and each of them, Plaintiff has suffered actual, consequential and incidental financial losses, including without limitation, loss of salary and benefits, and the intangible loss of employment related opportunities in her field and damage to her professional reputation, all in an amount subject to proof at the time of trial. Plaintiff claims such amounts as damages pursuant to Civil Code § 3287 and/or § 3288 and/or any other provision of law providing for prejudgment interest.

58. As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff has suffered and continues to suffer stress, anxiety, depression, humiliation, great emotional trauma, and continuing health conditions. Plaintiff is informed and believes and thereupon alleges that she will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

59. The acts taken toward Plaintiff were carried out by Defendant's officers and/or managing agents acting in a despicable, oppressive, malicious, deliberate, egregious and inexcusable manner and in conscious disregard for the rights and safety of Plaintiff, and in direct violation of California law, thereby justifying an award of punitive damages in a sum appropriate to punish and make an example of Defendants, and each of them.

60. Further, because the wrongful acts against Plaintiff were carried out, authorized or ratified by Defendants' directors, officers and/or managing agents, acting with malice, oppression or fraud, or were deliberate, willful and in conscious disregard of the probability of causing

injury to Plaintiff, as reflected by the actions as described earlier in this Complaint, Plaintiff seeks punitive damages against Defendants, in order to deter Defendants from such and similar conduct in the future.

**THIRD CAUSE OF ACTION**

**VIOLATION OF HEALTH & SAFETY CODE SECTION 1278.5**

**(Against ALL Defendants)**

61. Plaintiff incorporates, by reference, all the foregoing paragraphs of this Complaint as though fully set forth herein.

62. The California Legislature has determined that, in order to protect patients, "it is the public policy of the State of California to encourage patients, nurses, members of the medical staff, and other health care workers to notify government entities of suspected unsafe patient care and conditions."

63. Pursuant to Health and Safety Code Section 1278.5(b), "[n]o health facility shall discriminate or retaliate, in any manner, against any patient, employee, member of the medical staff, or any other health care worker of the health facility because that person... [p]resented a grievance, complaint, or report to the facility, to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity." Pursuant to section 1278.5 (i), 'health facility' means any facility defined under this chapter, including, but not limited to, the facility's administrative personnel, employees, boards, and committees of the board, and medical staff."

64. At all times relevant to this matter, Plaintiff was an employee and health care worker as defined under this Code who was employed by Defendant at a health facility as defined under this Code.

65. Defendant retaliated against Plaintiff because she reported concerns about patient care, services. The Joint Commission states, "Intimidating and disruptive behaviors can foster medical errors, contribute to poor patient satisfaction and to preventable adverse outcomes...

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

Safety and quality of patient care is dependent on teamwork, communication, and a collaborative work environment. To assure quality and to promote a culture of safety health care organizations must address the problem of behaviors that threaten the performance of the health care team. Intimidating and disruptive behaviors include overt actions such as verbal outbursts and physical threats, as well as passive activities such as refusing to perform assigned tasks or quietly exhibiting uncooperative attitudes during routine activities...All intimidating and disruptive behaviors are unprofessional and should not be tolerated."

66. The Joint Commission acknowledges, "The presence of intimidating and disruptive behaviors in an organization [] erodes professional behavior and creates an unhealthy or even hostile work environment..." [Emphasis added.] An unhealthy and unsafe work environment threatens the physical and psychological safety of employees and members of the medical staff.

67. Health and Safety Code Section 1278.5(d)(1), states, "there shall be a rebuttable presumption that discriminatory action was taken by the health facility or by the entity that owns or operates that health facility, or that owns or operates any other health facility, in retaliation against an employee, member of the medical staff, or any other health care worker of the facility, if responsible staff at the facility or the entity that owns or operates the facility had knowledge of the actions, participation, or cooperation of the person responsible for any acts described in paragraph (1) of subdivision (b), and the discriminatory action occurs within 120 days of the filing of the grievance or complaint by the employee, member of the medical staff or any other health care worker of the facility."

68. Harassing and retaliatory actions were taken against Plaintiff within 120 days of presenting complaints regarding patient care, services, including, but not limited to, wrongfully terminating her employment.

69. Health and Safety Code Section 1278.5 has no administrative or judicial exhaustion requirement.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

70. Plaintiff's complaints regarding patient care, and services, were a substantial motivating reason for Defendant decision retaliate and terminate Plaintiff.

71. As a direct and proximate result of the conduct of Defendants and Does 1-50, and each of them, Plaintiff has suffered damages including, but not limited to, loss of income and benefits, emotional anguish and distress, loss of income, loss of benefits and other special and general damages all in an amount to be shown and according to proof at trial.

72. As a further and proximate result of the conduct of Defendants and Does 1-50, and each of them, Plaintiff has also been damaged in that Plaintiff has suffered intangible losses of employment related opportunities as experience, promotions, pay raises, seniority, benefits and enhanced reputation. As a result of such conduct, Plaintiff has suffered damages in an amount to be shown and according to proof at trial.

73. In doing the things herein alleged, the conduct of the Defendants and Does 1-50, and each of them, is despicable and Defendants and Does 1-50, and each of them, acted towards Plaintiff with malice, fraud, oppression, and with a willful and conscious disregard of Plaintiff's rights. Defendants and Does 1-50, and each of them, ratified, authorized and condoned the conduct of each and every other Defendants and managing agent, entitling Plaintiff to an award of punitive damages and exemplary damages pursuant to California Civil Code Section 3294.

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367

**WHEREFORE, Plaintiff prays for judgment as follows:**

1. For general damages according to proof;
2. For special damages according to proof;
3. For punitive damages according to proof;
4. For attorney fees and costs of suit;
5. For prejudgment and post-judgment interest according to law; and
6. For such other and further relief as the court may deem just and proper.

**DEMAND FOR JURY TRIAL**

DATED: May 28, 2019

JML LAW, A Professional Law Corporation

By: /s/ Jared Beilke

JOSEPH M. LOVRETOVICH
JARED B. BEILKE
KARINA GODOY
Attorneys for Plaintiff

JML LAW
A Professional Law Corporation
5855 Topanga Canyon Blvd., Suite 300
Woodland Hills, CA 91367